**THIERMAN BUCK LLP**
MARK R. THIERMAN, Bar No. 072913
JOSHUA D. BUCK, Bar No. 258325
LEAH L. JONES, Bar No. 276448
7287 Lakeside Drive
Reno, NV 89511
Telephone:    775.284.1500
Fax No.:       775.703.5027

Attorneys for Plaintiff
KAREN MARTINEZ AND THE CLASS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| KAREN MARTINEZ, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MUIR HEALTH, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  4:17-cv-05779-CW<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>DATE:        November 19, 2019<br>TIME:         2:30 p.m.<br>DEPT:         Courtroom 2, 4th Floor<br>JUDGE:       Hon. Claudia Wilken<br><br>COMPLAINT FILED:  Oct. 6, 2017<br>FAC FILED:  Dec. 1, 2017 |

1.

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on November 19, 2019, or as soon thereafter as the matter

3    may be heard by the Honorable Claudia Wilken of the United States District Court of the Northern

4    District of California, located at 1301 Clay Street, Courtroom 2 – 4th Floor, Oakland, CA 94612,

5    Plaintiff will and hereby does move the Court pursuant to Rule 23 of the Federal  Rules of Civil

6    Procedure and the Fair Labor Standards Act (FLSA) for an order:

7    (1)    Finally approving a proposed collective and class action settlement with

8            Defendant John Muir Health;

9    (2)    Finally certifying the Class for purposes of settlement; and

10    (3)    Approving the named-Plaintiff Service Award, Class Counsel's Fees and

11           Costs, and the Costs of the Settlement Administrator.

12    This motion is based on this Notice of Motion and Motion for Final Approval of Settlement

13    with Defendants, the following memorandum of points and authorities, the settlement agreement

14    previously filed with this Court as an attachment to the Declaration of Joshua D. Buck at ECF No.

15    62-1, the Declaration of Settlement Administrator Jarrod Salinas, the Declaration of Karen Martinez

16    in support of this motion, the Declaration of Joshua D. Buck filed in support of this motion, the

17    pleadings and papers on file in this action, and such other matters as the Court may consider.

18    Dated: October 31, 2019

19                                        */s/Joshua D. Buck*                          .
                                          JOSHUA BUCK
20                                        THIERMAN BUCK LLP
                                          Attorneys for Plaintiff
21                                        KAREN MARTINEZ

22

23

24

25

26

27

28

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS
ACTION SETTLEMENT

# TABLE OF CONTENTS

I.       INTRODUCTION...................................................................................................... 1

II.      BACKGROUND ...................................................................................................... 2

   A.       The Settlement Class........................................................................................ 2

   B.       The Settlement Consideration ......................................................................... 3

   C.       Release of Claims ............................................................................................ 3

   D.       The Notice Process .......................................................................................... 4

   E.       Settlement Allocation Plan .............................................................................. 6

   G.       Service Award/General Release Payment to Plaintiff ..................................... 6

   H.       Class Counsel Fees and Costs ......................................................................... 7

V.       ARGUMENT .......................................................................................................... 7

   A.       The settlement classes should be certified. ..................................................... 7

   B.       Plaintiff has complied with Rule 23(c) notice requirements. .......................... 7

   C.       The Settlement Agreement is fair, adequate and reasonable. .......................... 8

     1.      The strength of plaintiffs' case supports final approval.................................. 9

     2.      The risk, expense, complexity, and duration of further litigation supports final approval. .............................................................................................. 11

     3.      The risk of maintaining class action status through trial................................ 11

     4.      The amount offered in settlement supports final approval............................... 12

     5.      The extent of discovery completed and stage of proceedings supports ..................... 12

                     final approval. ............................................................................................ 12

     6.      The experience and views of class counsel support approval. ....................... 13

     7.      The non-presence of a government participant supports final approval. ................. 13

     8.       The reaction of the classes supports final approval..................................... 13

IV.      THE LONE "OBJECTION" SHOULD BE DENIED .............................................. 13

V.       THE PROPOSED PLAN OF ALLOCATION IS FAIR................................................ 15

VI.      CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Brinker Rest. Corp. v. Superior Court*,
  53 Cal. 4th 1004, 273 P.3d 513 (2012) ......................................................................... 10

*Gaudin v. Saxon Mortg. Servs., Inc.*,
  No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ........................................ 15, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ........................................ 8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)................................. 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944, 2016 U.S. Dist. LEXIS 24951, at
  *216 (N.D. Cal. Jan. 28, 2016) ........................................................................................ 16

*In re Omnivision Tech.*, 559 F. Supp. 2d at 1045 (N.D. Cal. 2008) ..................................... 16

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ........................................ 9

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). ...... 9

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ............................... 13

*Officers for Justice*, 688 F.2d at 625 .................................................................................. 10

*Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ........................................ 8

*Sciortino v. PepsiCo, Inc.*, No. 14-cv-00478, 2016 U.S. Dist. LEXIS 83937, at *20 (N.D. Cal. June
  28, 2016) ............................................................................................................................ 14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007)..................................... 14

*Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal.
  Feb. 2, 2009) ...................................................................................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)................................. 13

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ..................................................... 7

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011)................................................ 9

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) .................................. 9

*Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 U.S. Dist. LEXIS 43672, at *48 (N.D. Cal. Mar. 24,
  2017) .................................................................................................................................. 14

## Statutes

29 U.S.C. Section 207(a) ..................................................................................................... 3

California Business & Professions Code Sections 12700................................................... 4

California Labor Code Sections 201, 202 and 203 ............................................................................ 4, 9

California Labor Code Sections 226 and 226.3 ............................................................................... 4, 9

California Labor Code Sections 226.7 and 512 ............................................................................... 3, 9

California Labor Code Sections 2698-2699.5 ................................................................................. 4, 9

California Labor Code Sections 510, 558 and 1198 ........................................................................... 3

California Labor Code Sections 558, 1179.1, 1194, 1194.2(a) and 1197 ........................................... 3

Fed. R. Civ. P. 23(e)(2) ....................................................................................................................... 7

**<u>Other Authorities</u>**

Rule 23 of the Federal  Rules of Civil Procedure .................................................... 2, 1, 2, 16

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

4    Plaintiff Karen Martinez seeks final approval of this non-reversionary $9.5 million collective

5    and class action settlement ("Settlement") pursuant to Rule 23 of the Federal Rules of Civil

6    Procedure, the Fair Labor Standards Act (FLSA) and the Northern District of California's Procedural

7    Guidance for Class Action Settlements (updated Nov. 1, 2018 and Dec. 5, 2018) ("N.D. Cal.

     Procedural Guidance").

8    The Plaintiff and Defendant (collectively "the Parties") have complied with all the terms of

9    the Court's order granting preliminary approval.  *See* ECF NO. 70.  Class Counsel posted all the

10   relevant documentation on its website for all class members to see.  *See*

11   https://thiermanbuck.com/john-muir-adv-martinez/ (posting the preliminary approval order,

     Settlement Notice, Settlement Agreement, Class Counsel Fee and Costs Motion).  Class Counsel

12   filed the motion for attorneys' fees and costs on July 9, 2019, and posted the motion on its website

13   immediately thereafter.  *See* ECF No. 72.

14   Settlement Notices were also distributed by Settlement Administrator Simpluris pursuant to

15   this Court's Order granting preliminary approval.  *See* ECF No. 70; Declaration of Settlement

16   Administrator Jarrod Salinas ("Salinas Dec.").  After receiving the Notice packets and class contact

17   information, Simpluris mailed the Notice to 6,498 class members.  *See* Salinas Dec. at ¶ 7.

18   Ultimately, 36 Notices were deemed undeliverable.  *Id.* at ¶ 11.  Only 8 class members sought to be

19   excluded from the Settlement, which represents .12% of the Settlement Class.  *Id.* at ¶ 12.  Only one

20   (1) individual, Mr. David Buss, filed an "objection" to the Settlement.  *See* ECF No. 73; Salinas Dec.

21   at ¶ 13.  As discussed more fully below in Section V, Mr. Buss called Class Counsel to discuss his

22   "objection."  During that phone conversation, and his subsequent communications thereafter, Mr.

23   Buss clarified that he did not wish to hold up the Settlement.  *See* Declaration of Joshua D. Buck

24   filed in support of Final Approval ("Buck Dec.").  Instead, Mr. Buss simply desired to voice his

25   opinion as to Defendants past and present labor practices. *Id.* Accordingly, Mr. Buss' "objection"

26   should not be an obstacle to approving this Settlement.

27   The Settlement is the product of a voluminous exchange of data and a lengthy negotiation

28   process that resulted in the Parties accepting a proposal made by experienced California wage-hour

1.

mediator Mark S. Rudy.  The Total Settlement Amount of $9.5 million represents a recovery of approximately 44% of the total potential exposure in this action.[1]  Settlement at ¶ 17.[2]  The Net Settlement Amount available for distribution to all class members is $6,682,751, which is based upon the Total Settlement Amount minus (i) $15,000 named-Plaintiff service award and general release payment, (ii) up to $2,375,000 in attorneys' fees (25% of the common fund), (iii) $35,000 in actual litigation costs incurred, (iv) $35,999 in third party settlement administrator fees, and (v) $356,250 to be paid to the California Labor and Workforce Development Agency (LWDA).  *Id.* at ¶ 18.  Defendant will separately pay the employer share of taxes on top of the Total Settlement Amount. *Id.* at ¶ 17.

The $9.5 million Settlement is non-reversionary and the settlement shares are based upon non-discriminatory assessment of the total number of hours worked by the Class. The average estimated settlement amount for each class members is $1,024.65.  *See* Salinas Dec. at ¶ 14.  The highest estimated settlement amount is $5,366.53.  *See id.*  For all these reasons, and for those set forth more fully below, Plaintiff submits that the Settlement should be final approved as a fair, adequate and reasonable resolution of the litigation.

## II.    BACKGROUND

This Court is familiar with the allegations in this case, which Plaintiff does not repeat here. Plaintiff included a detailed discussion of the procedural history and their efforts in litigating this case in the motion for preliminary approval (*see* ECF No. 62) and motion for Class Counsel fees and costs (*see* ECF No. 72).

### A.    The Settlement Class

The Court preliminarily certified the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure and the FLSA ("Settlement Class"):

---

[1] As set forth fully in Plaintiff's motion for preliminary approval of the Settlement, *see* ECF No. 62, Plaintiff estimates that Defendant's total exposure on the off-the-clock claims for work performed during a clocked-out meal period and after the shift is approximately 21.5 million.  This exposure does not include potential penalties that could be recovered.

[2] The Settlement was filed as an Exhibit to the Declaration of Joshua D. Buck in support of Plaintiff's motion for preliminary approval of the collective and class action settlement.  The Settlement can be found at ECF No. 62-1, pp. 16-47.

1
2
3

> All individuals who were employed by Defendant John Muir Health or its affiliate, John Muir Physicians Network, in California during the Class Period, who worked at least one shift as a non-exempt employee in California during the Class Period, and who, according to Defendant's records, made at least one entry into the EPIC or Midas electronic systems during the Class Period.

4
5

ECF No. 70, at ¶ 6; ECF No. 62, at pp. 8-9; Settlement at ¶ 5.  Plaintiff seeks that this Settlement Class be certified through final approval.

6

### B.      The Settlement Consideration

7
8
9
10
11
12
13
14
15

The Settlement provides a Total Settlement Amount of $9.5 million.   Settlement at ¶ 17. The estimated Net Settlement Amount available for distribution to all class members is $6,682,751, which is based upon the Total Settlement Amount minus (i) $15,000 named-Plaintiff service award and general release payment, (ii) $2,375,000 in attorneys' fees (25% of the common fund), (iii) $35,000 in actual litigation costs incurred, (iv) $35,999 in third party settlement administrator fees, and (v) $356,250 to be paid to the California Labor and Workforce Development Agency (LWDA). Settlement at ¶ 18.  For tax purposes, individual class members payments will be allocated as 1/3 wages, 1/3 interest, and 1/3 penalties.  *Id.* at ¶ 20. Defendant will separately pay the employer share of taxes on top of the Total Settlement Amount. *Id.* at ¶ 17.

16

### C.      Release of Claims

17
18
19
20

Once the Settlement is final and effective, the named Plaintiff and settlement class members who have not opted-out will release all federal and state law claims for damages against Defendant that are based on the factual allegations asserted in the FAC. The release of claims specifically states as follows:

21
22
23
24
25
26
27
28

> The "**Released Claims**" include all claims arising or accruing during the Class Period that were pleaded in the Complaint or that could have been pleaded in the Action, **based on the factual allegations contained in the Complaint**. Accordingly, the Released Claims include all claims that Defendant: (1) violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 207(a), by failing to pay overtime to Plaintiff and the Class Members; (2) violated California Labor Code Sections 558, 1179.1, 1194, 1194.2(a) and 1197 by failing pay to minimum wages to Plaintiff and the Class Members (including the alleged failure to pay for all hours worked and pay the proper minimum wage for all hours worked); (3) violated California Labor Code Sections 510, 558 and 1198 by failing to pay overtime to Plaintiff and the Class Members (including the alleged failure to pay for all overtime hours worked and to pay a proper overtime rate for overtime hours worked); (4) violated California Labor Code Sections 226.7 and 512 and corresponding provisions of the Industrial Welfare Commission Wage Order by

3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

failing to provide meal and rest periods to Plaintiff and the Class Members and/or failing to pay meal and rest period premiums owed to Plaintiff and the Class Members; (5) violated California Labor Code Sections 226 and 226.3 by failing to provide accurate itemized wage statements to Plaintiff and the Class Members; (6) violated California Labor Code Sections 201, 202 and 203 by failing to pay all wages due upon separation of employment to Plaintiff and the Class Members; (7) violated the Private Attorneys General Act ("PAGA"), found at California Labor Code Sections 2698-2699.5, through each of the foregoing alleged violations of California law; (8) violated Sections 202(a) and 216(b)-(c) of the FLSA by entering into individual settlement agreements with some of the Class Members; and (9) engaged in unfair competition in violation of California Business & Professions Code Sections 12700, et seq., through each of the foregoing alleged violations of California law.  In addition, and without limiting the foregoing, the Released Claims include **all claims that could have been pleaded based on the factual allegations contained in the Complaint**, such as: Defendant did not pay the Class for all "hours worked" under California law and the FLSA; Defendant did not pay the Class for all overtime hours worked and/or failed to compensate all overtime hours worked at a proper overtime rate of pay; Defendant did not properly include bonuses and other incentive compensation in the "regular rate" for wage payment purposes; Defendant interrupted employees' meal and rest breaks, provided short or late meal or rest breaks and/or did not provide the opportunity to take meal or rest breaks; Defendant did not specify an accurate number of hours worked or an accurate regular rate on wage statements and/or did not provide other required wage statement information; and Defendant did not pay all final wages due to employees upon separation of employment, given additional wages due and owing in light of the Complaint's off-the-clock, overtime, regular rate and/or meal/rest break claims.

17

*Id.* at ¶ 10 (emphasis added).

18

**D.    The Notice Process**

19
20
21
22
23
24
25

On June 24, 2019, Simpluris received the Court-approved Class Notice from Class Counsel. Pursuant to the Court's order granting preliminary approval, the Class Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action.  The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information.  The Class Notice was pre-printed with the name and address of the Class Member, hours worked used to calculate his/her estimated Settlement share, and instructions for challenging the hours worked.  *See* Salinas Dec. at ¶ 4.

26
27
28

On August 2, 2019, Counsel for Defendant provided Simpluris with a mailing list containing the name, last known address, Social Security Number, and pertinent employment information

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

during the Class Period for the Class Members.   The Class List contained data for 6,498 unique Class Members. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA contains changes of address filed with the U.S. Postal Service.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. *See id.* at ¶¶ 5-6.

On August 16, 2019, after updating the mailing addresses through the NCOA, Notice Packets were mailed via First Class Mail to 6,498 Class Members contained in the Class List.  If a Class Member's Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis.  Simpluris used the Class Member's name, previous address and Social Security Number to locate a current address.  Through the advanced address searches, Simpluris was able to locate 518 updated addresses and Simpluris promptly mailed Notice Packets to those updated addresses.  Ultimately, 36 Class Member's Notices were undeliverable because Simpluris was unable to locate a current address. *See id.* at ¶¶ 8, 11.

After the initial notice mailing, 114 individuals contacted Simpluris to request inclusion in the Settlement Class.  Information regarding the self-identifying Class Members was forwarded to Defense Counsel for research to determine if they should be included in the Settlement Class.  In consultation with Defendant and their employment records, Simpluris determined that 32 should be added because they were inadvertently left off of the original Class List.  Simpluris promptly mailed Notice Packets to these added Class Members and gave them 45 days to opt out or file an objection.

Simpluris determined that the remaining 78 were correctly excluded from the Class List for a variety of reasons: (i) 32 did not make an entry into the EPIC or MIDAS systems during the Class Period; (ii) 6 did not hold a non-exempt position with John Muir Health or John Muir Physicians Network during the Class Period; and (iii) 40 were not employed by John Muir Health or John Muir Physicians Network, but rather were employed by distinct entities not party to this lawsuit. After adding the accepted self-identifying Class Members, the total Class Size grew to 6,530 (however the number of "participating class members" was 6,522 because 8 opted out). *See id*. at ¶ 8.

As of this date, 5 Class Members disputed Defendant's records that were pre-printed on their Class Notice. Simpluris worked with the Defendant to resolve these disputes and Defendant sent Simpluris an accounting of the 5 Class Members' hours worked. Simpluris reviewed the data provided by Defendant and resolved the disputes. The disputes resulted in a total of 6,729.86 hours being added to the 35,645,567.11 hours provided in the original Class Member data. *See id.* ¶ 10.

Only 8 class members sought to be excluded from the Settlement, which represents .12% of the Settlement Class. One individual filed an "objection" to the Settlement apparently for personal reasons because he believes that he missed more rest breaks than what he is being provided for under the Settlement. *See id.* at ¶¶ 12-13.

### E.      Settlement Allocation Plan

The Settlement is non-reversionary, meaning that all of the Net Settlement Amount will be paid to each and every class member who does not exclude themselves from the Settlement. Individual class member estimated payments were calculated by comparing the total number of recorded hours worked by the entire class with the hours worked by each individual class member to determine each class member's pro rata share during the Class Period. Settlement at ¶ 18. Payments for the 8 class members who excluded themselves from the Settlement will re-distributed to participating class members. *Id.* Individual class member settlement payments that remain uncashed for 365 days after mailing of the payments will be transmitted to the *cy pres* recipient approved by the Court. *Id.* at ¶ 39.

### G.      Service Award/General Release Payment to Plaintiff

This Court is familiar with the work performed on behalf of the Class by Plaintiff Karen Martinez up to and including the work she performed in support of the motion for preliminary approval of the Settlement. *See* ECF No. 62. Ms. Martinez has continued to take her duties as class representative seriously and has been in consistent contact with many class members since preliminary approval was granted. Over the course of the Notice period and up to an including the date of this motion for final approval, Ms. Martinez estimates that she has expended approximately 30 additional hours of her own time on behalf of this case. Thus, in total, Ms. Martinez has expended approximately 130 hours over the last three years on behalf of herself and other class members. *See* Declaration of Karen Martinez filed in support of Final Approval ("Martinez Dec.").

6.

1

### H.    Class Counsel Fees and Costs

2

Shortly after the Court's order granting preliminary approval of the Settlement, Class

3

Counsel filed their motion for approval of Class Counsel Fees and Costs and posted said motion on

4

Class Counsel's website for class members to review.  *See* ECF No. 72.  Not a single class member

5

has objected to Class Counsel's requested fees and/or costs.  The arguments in support of awarding

6

the standard 25% benchmark for a common fund case, and the litigation costs actually expended in

7

prosecuting this action, are set forth in the separate motion and will not be repeated here.  *See* ECF

8

No. 72.

### V.    ARGUMENT

9

Three steps must be satisfied for final approval of the Settlement Agreement. *First*, the Court

10

must certify the settlement classes. *Second*, the Court must find that the classes received adequate

11

notice under Federal Rule of Civil Procedure 23(c)(2)(B). *Third*, the Court must decide whether the

12

Settlement Agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v.*

13

*Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard). These

14

requirements are all met.

15

### A.    The settlement classes should be certified.

16

In the order granting preliminary approval, this Court re-affirmed the conditional certification

17

of the FLSA Class and provisionally certified the same Class under Rule 23.  *See* ECF No. 70. The

18

same analysis applies here, so the Class should be certified for settlement purposes under Rule 23(e),

19

for the same reasons set forth in plaintiffs' motion for preliminary approval of the Settlement

20

Agreement.  *See* ECF No. 62.

### B.    Plaintiff has complied with Rule 23(c) notice requirements.

21

A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions,

22

and upon settlement, the "court must direct notice in a reasonable manner to all class members who

23

would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Rule 23(c)(2) requires the "best notice that

24

is practicable under the circumstances, including individual notice" of particular information.   Fed.

25

R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

26

This Court approved the proposed class notice and notice program. As described in Section

27

above, the Settlement Administrator appointed by the Court (Simpluris) implemented that program.

28

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS
ACTION SETTLEMENT

Over 99.44% of the class members received notice, (*see* Salinas Dec. at ¶ 11), which far exceeds the constitutional requirement for notice. The notice itself informed class members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements. This notice complies with all of the requirements of Rule 23.

**C.     The Settlement Agreement is fair, adequate and reasonable.**

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (internal citation and quotation marks omitted).

 In determining whether a settlement agreement is fair, adequate, and reasonable, the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *In re*

1    *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

2           All of these factors support approval of the Settlement Agreement.
             **1.      The strength of plaintiffs' case supports final approval.**

3           In assessing the strength of plaintiffs' case, the Court should not reach "any ultimate

4    conclusions regarding the contested issues of fact and law that underlie the merits of this litigation."

5    *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 at 625 (9th Cir. 1982).  Instead, the Court is

6    to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those

7    considerations on the parties' decisions to reach these agreements."  *In re Washington Pub. Power*

8    *Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The Court's assessment of the

9    likelihood of success is "nothing more than 'an amalgam of delicate balancing, gross approximations

10   and rough justice.'"  *Officers for Justice*, 688 F.2d at 625 (internal citations omitted).

11          Here, the Settlement represents a compromise between experienced counsel for Plaintiff and

12   Defendant based upon each Party's honest assessment of the legal and factual strengths and

13   weaknesses of their respective position.  From Plaintiff's perspective, the Total Settlement Amount

14   represents at 44% recovery of the total exposure of hard damages (not including penalties) that

15   Defendant faced.  Plaintiff's expert on damages calculated the exposure of the Off-the-Clock and

16   regular rate claims to be approximately 21.5 million.  (This exposure does not include potential

17   penalties that could be recovered.)  The exposure was calculated by Plaintiff's data analyst after

18   punch data with the time stamp data from the EPIC/MIDAS software system.

19          The exposure for potential meal and rest break penalties under Lab. Code § 226.7, itemized

20   wage statement penalties under Lab. Code § 226, waiting time penalties under Lab. Code § 203, and

21   PAGA penalties under Lab. Code § 2698, et seq., was significantly higher than the exposure for the

22   hard regular rate and overtime damages identified above.  The calculated exposure on these penalties

23   was in the nine (9) figures.  There were many reasons for discounting the applicability of these

24   penalties.  As an initial matter, all penalties are derivative of the underlying claims for unpaid wages.

25   In the event that Plaintiff was unsuccessful in the recovery of the underlying wages or in the event

26   that certification was not maintained, the penalty exposure would be zero.  But even in the event that

27   Plaintiff was successful in proving her underlying claims, numerous hurdles would remain with

28   respect to the penalty claims.  First, the recovery of even a fraction of the penalties potentially

9.

1   recoverable in this case would severely impact the continued business operations of Defendant.

2   Second, the PAGA penalties are entirely discretionary with the Court and Plaintiff believed it would

3   be unlikely that the Court would impose a penalty that would impact the continued viability of a

4   long standing health care institution in the Walnut Creek area.  Third, the recovery of waiting time

5   penalties requires a showing of willfulness and, without conceding a litigation position, Plaintiff

6   admits that such a heightened showing would prove difficult at trial. Fourth, again without

7   conceding a litigation position should this Settlement not be approved, the recovery of meal and rest

8   break penalties on a class wide basis may be problematic in light of the standard for certification of

9   those claims under *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 273 P.3d 513 (2012),

10   and the fact that Defendant maintained a facially compliant meal and rest break policy.

11   Furthermore, many employees attested in declarations that it was their choice to forgo their meal and

12   rest breaks or that they chose to take their rest break at a later time.  (*See* ECF Nos. 29-1, *et seq*.).

13   For these reasons, the penalty exposure is not considered when calculating the Settlement's value in

      comparison to the total exposure.

14          Plaintiff agreed to resolve her claims on her behalf and on behalf of the class at an estimated

15   44% recovery of the total potential for the following principal reasons.  First, as with all settlements,

16   a recovery at 44% the total potential recovery represents a relatively quick and certain payout for all

17   members of the Class.  Second, resolving the action as a total non-reversionary payout to all

18   members of the Class takes away any risk that the action may not ultimately proceed to trial on a

19   class-wide basis.  By resolving the case on a class-wide basis, all class members will be receiving

20   funds whereas there is significant risk that the amount paid to absent class members would be zero.

21   Third, the case was a highly disputed as to what the data actually showed.  Plaintiff alleged that the

22   EPIC and MIDAS systems, in comparison to the punch data, demonstrated that Plaintiff and other

23   class members were working Off-the-Clock pre and post shift and during the workday.  Defendant,

24   on the other hand, argued that while the data may have showed a timestamp while an employee was

25   "off-the-clock", it did not conclusively demonstrate that the employee was actually working because

26   (i) the timestamp could have been made passively by the computer system or by another employee

27   on behalf of an employee who forgot to log-off, (ii) the duration of the work was incalculable, (iii)

28   even if an employee made an entry "off-the-clock", that employee could have then proceeded to take

10.

1    a legally compliant break.  Ultimately, in Defendant's opinion, all of these factors negated class wide

2    treatment of the issue and would undercut any potential liability.

3            In short, the class, liability, and damage issues in this case were all hotly contested.  The

4    Parties reached their Settlement following the exchange of numerous position statements, the

5    production of thousands of pages of evidence and millions of lines of data, and only after mediator

6    Mark S. Rudy submitted his own mediator's proposal to resolve the action

7            This factor supports final approval.

8            **2.    The risk, expense, complexity, and duration of further litigation supports
             final approval.**

9            Federal and state hybrid wage and hour cases, such as this one, present unique challenges that

10   support final approval.  First, as this Court is aware, the cost of ongoing litigation can be significant.

11   Plaintiff had retained two separate experts to assist in developing an ESI plan to analyze millions of

12   lines of data to prove her case.  The likely expense of these experts would be in the hundreds of

13   thousands of dollars.  *See, e.g.*, ECF No. 62, at p. 16 (identifying the costs recovered in a related

14   settlement in the amount of $230,000).  Plaintiff was also charged with spending resources to support

15   notice to the FLSA class and the putative Rule 23 class, if ultimately certified.

16           Beyond the actual litigation costs that could potentially limit class member recoveries had this

17   case proceeded, the risk, complexity and duration of further litigation supports early resolution. Class

18   Counsel is counsel in other wage hour class action cases that have been litigated for almost a decade

19   without any class member relief.  The issues in those cases have reached the highest court in the United

20   States and have been subject to countless legal challenges.  *See* ECF No. 72, at p. 11 (identifying two

21   complex cases that Class Counsel has been involved with over the last few years that have not been

22   resolved and complex legal issues continue to be litigated).  This action could be subject to similar

23   legal and factual challenges that would potentially delay justice for years to come. The Settlement

24   Agreement brings significant relief to the classes despite this ongoing risk. This factor also supports

25   final approval of the Settlement Agreement.

26           **3.    The risk of maintaining class action status through trial.**

27           The third factor, the risk of maintaining class action status through trial, also supports final

28   approval of the settlements here. Defendants vigorously opposed plaintiffs' motion for conditional

     certification and would likely do the same for class certification under Rule 23.  If the Settlement

---

11.

Agreement were not approved, plaintiffs would need to maintain conditional certification throughout the trial and move the Court to grant Rule 23 certification.  If the Rule 23 motion were denied, and if the FLSA class was later decertified, the putative class members would recover nothing.  Once again, this factor supports final approval of the Settlement Agreement.

### 4.    The amount offered in settlement supports final approval.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). The $9.5 Total Settlement Amount represents approximately 44% of the total hard damages (not including penalties) that could have been recovered in this case if Plaintiff was ultimately successful on her claims.  While certainly less than 100 cents on the dollar, the percentage recovered is significant because it provides quick and certain relief to more than 6,500 class members.  Indeed, the average estimated settlement amount for each class members is $1,024.65 and the highest estimated settlement amount is $5,366.53.  *See* Salinas Dec. at ¶ 14.  This factor strongly weighs in favor of granting final approval.

### 5.    The extent of discovery completed and stage of proceedings supports final approval.

The extent of the discovery conducted and the stage of the litigation are both indicators of counsel's familiarity with the case and of their having sufficient information to make an informed decision. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *See Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009). The parties here conducted extensive discovery, thoroughly testing the claims and defenses available in this case.

As explained in the motion for preliminary approval and Class Counsel fees and costs (see ECF Nos. 62 and 72), the Parties conducted significant formal and informal discovery.  Defendant provided thousands of pages of documents in response to Plaintiff's discovery requests and, most importantly, provided millions of lines of data (payroll, punch, EPIC/MIDAS) prior to the Parties' mediation efforts.  ECF No. 62-1, at ¶¶ 4-10.  In sum, the Parties reached this Settlement through arm's-length bargaining, after sufficient investigation and discovery and intensive arms-length

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

negotiating overseen by an experienced and respected mediator with an expertise in employment litigation.  See generally ECF No. 62-1.

The extent of relevant discovery strongly favors final approval of the Settlement Agreement.

**6.      The experience and views of class counsel support approval.**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonable-ness."  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation and internal quotation marks omitted). Here, plaintiffs' counsel—wage and hour class action lawyers with many years of experience—support the settlement. *See* ECF Nos. 62-1, 62-2, 62-3, 72-1, 72-2, 72-3. This factor again weighs in support of final approval.

**7.      The non-presence of a government participant supports final approval.**

"No governmental entity participated in this matter; this factor, therefore, is irrelevant to the Court's analysis." *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 U.S. Dist. LEXIS 43672, at *48 (N.D. Cal. Mar. 24, 2017). *Accord*, *Sciortino v. PepsiCo, Inc.*, No. 14-cv-00478, 2016 U.S. Dist. LEXIS 83937, at *20 (N.D. Cal. June 28, 2016) ("Because there is no government participant in this case, this factor is inapplicable.").

**8.      The reaction of the classes supports final approval.**

Only 8 class members sought to be excluded from the Settlement, which represents .12% of the Settlement Class.  One individual has filed an "objection", but for the reasons set forth immediately below if the "objection" is not clarified or withdrawn prior to the final approval hearing, it should be denied.

**IV.     THE LONE "OBJECTION" SHOULD BE DENIED**

Class member David Buss filed an "objection" to the Settlement on the grounds that he believed the "proposed settlement far underestimates the number of rest breaks denied to me during the period in question."  ECF No. 73.  As a result, Mr. Buss requested that the Court "increase the settlement amount" and to "appoint a court officer to monitor the actions of John Muir Health for a suitable period and receive complaints regarding on-going denial of rest breaks."  *Id.*

Mr. Buss contacted Class Counsel's office after he filed his "objection" on October 16, 2019. *See* Declaration of Joshua D. Buck ("Buck Dec.") at ¶ 4.  During that conversation, Mr. Buss indicated to Class Counsel that he did not wish to hold up the Settlement and indicated that he wanted to "clarify" his "objection" with the Court.  *Id.* at ¶ 5.  Mr. Buss told Class Counsel that he

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

was not objecting to the Settlement, per se, but rather expressing his opinion as to Defendant's past and current labor practices. *Id.* Mr. Buss later emailed Class Counsel seeking guidance on how to clarify that he did not intend to "object" to the Settlement. *Id.* at ¶ 6. Class Counsel responded that he did not believe it was appropriate to assist Mr. Buss in "clarifying" his "objection" so as to avoid the appearance that he influenced Mr. Buss' decision. *Id.* Mr. Buss replied to Class Counsel's email that he would send a clarifying letter to the Court. *Id.* As of the date of this motion, it does not appear that Mr. Buss has filed a clarification with the Court. *Id.* at ¶ 7.

As an initial matter, Mr. Buss' "objection" is not really an objection at all. Rather, Mr. Buss appears to have filed and "objection" as way of simply voicing his opinion about the Settlement and the amount to be paid out. While Mr. Buss seems disappointed about the Settlement value, he has told Class Counsel that he does not wish to hold up the Settlement. Buck at ¶ 5.

Class Counsel is sensitive to the issues raised by Mr. Buss's "objection". Indeed, Class Counsel wishes that it could have achieved a greater settlement value on behalf of the entire Class. But the Settlement that was achieved was the result of months of negotiations with the assistance of one of the best wage-hour mediators in California and only came to fruition following the submission of a mediator's proposal. In other words, neither Plaintiff nor Defendant could bridge their differences without the assistance of a mediator who made his own proposal as to what the case should settle for given the legal and factual landscape.

Furthermore, in the event that Mr. Buss's "objection" is treated as an objection to the Settlement (as opposed to merely an opinion as to the Settlement value), the "objection" appears to stem from an individual issue that he may have with his particular supervisor(s) or in his particular department(s). Mr. Buss does not allege that he was required by Defendant to input patient notes into the computer system during his rest breaks (the allegation asserted in the complaint), rather he simply states that he was denied breaks. If Mr. Buss was prevented from taking his legally required rest break by a particular supervisory employee than he may have a valid individual legal claim but such a claim would not be subject to class treatment and is not a reason to deny the 6,522 other participating settlement class members the benefit of the settlement, which the class otherwise responded to positively as demonstrated by the very small number of class members who chose to opt out.

14.

Lastly, if Mr. Buss believes that he is owed more wages and penalties than he would be awarded under the Settlement, and wishes to pursue those wages and penalties, he should have opted-out of the Settlement and pursued those claims on his own behalf.  His objection should not hold up the thousands of other class members who wish to receive their settlement checks. Accordingly, Mr. Buss's objection should be denied.

## V.   THE PROPOSED PLAN OF ALLOCATION IS FAIR

Approval of a plan to allocate settlement funds to class members is governed by the same standard that applies to approval of settlement terms—the distribution plan must be "fair, reasonable and adequate."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944, 2016 U.S. Dist. LEXIS 24951, at *216 (N.D. Cal. Jan. 28, 2016); *In re Omnivision Tech.*, 559 F. Supp. 2d at 1045 (N.D. Cal. 2008).  A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.)

Here, all Class Members will receive a proportionate share of the Settlement fund based upon the total number of hours that they worked for Defendant.  The actual amount of alleged off the clock work performed for each of the class members would require enormous resources and cost.  Indeed, the Parties have negotiated this Settlement by using a sample that consisted of millions of lines of data. Therefore, instead of attempting to ascertain and agree upon an amount of alleged off the clock work performed and alleged regular rate violations as a basis for determining a class members' share, the Parties have agreed to use a per hour worked basis for calculating damages.  This is a practical cost saving approach that does not improperly differentiate between class members.

## VI.   CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that the Parties' Collective and Class Action Settlement be finally approved and seek and seek an Order from this Court for the following:

(1)   Approving a proposed collective and class action settlement with

Defendant John Muir Health;

15.

1      (2)      Issuing final certification of the Rule 23 Class for purposes of settlement;

2      (3)      Approving Class Representative Karen Martinez's Service Award;

3      (4)      Approving Class Counsel's Fees and Costs; and

4      (5)      Approving the fees of the Settlement Administrator.

Dated: October 31, 2019            THIERMAN BUCK LLP

*/s/Joshua D. Buck*                .
JOSHUA BUCK
Attorneys for Plaintiff
KAREN MARTINEZ

16.